**Henry HAMMOND, Plaintiff,**

**v.**

**UNITED STATES of America,
Defendant.**

**No. 74C 847.**

United States District Court,
E. D. New York.

Jan. 31, 1975.

Paul D. Rheingold, New York City, for plaintiff.

David G. Trager, U. S. Atty., USDC, EDNY by Thomas A. Illmensee, Asst. U. S. Atty., and Arthur N. Levine, Atty.— Food and Drug Division U. S. Dept. of Health, Education and Welfare, for defendant.

*Memorandum and
Order*

PLATT, District Judge.

This case was filed under the Federal Tort Claims Act, Title 28 U.S.C. §§ 1346(b), 2671–2680, to recover $5,000,-000 damages for injuries to plaintiff, Henry Hammond, allegedly caused by the negligence of the Government.

Plaintiff claims that the employees of the Division of Biologics Standards of the National Institute of Health, Department of Health, Education and Welfare negligently administered certain safety regulations pertaining to the manufacture and release of Sabin Oral Poliovirus Vaccine resulting in plaintiff's having contracted paralytic poliomyeliti and thereafter negligently misrepresented that the vaccine did in fact meet the requirements of these regulations. Specifically plaintiff complains that on or about June 14, 1962 a mobile truck unit employed by said Department of Health

furnished plaintiff with a Type III Sabin Oral Poliovirus Vaccine, identified as Lot 18, manufactured by Wyeth Laboratories, Inc. which had been approved for release by the United States Government. As a result of the ingestion of said vaccine plaintiff sustained the injury for which he now seeks recovery.

On July 19, 1965, plaintiff commenced an action in the Supreme Court of the State of New York, County of Kings, against the manufacturer of the vaccine, Wyeth Laboratories, Inc., for alleged negligence in its production and testing of Lot 18, seeking recovery for the same injuries complained of here.

On September 8, 1966, in preparation for trial, plaintiff participated in the taking of depositions of Dr. Roderick Murray, then Director of the Division of Biologics Standards, and Dr. Ruth Kirschstein, then Chief of the Pathology Section of the Laboratory of Viral Immunology, Divisions of Biologics Standards, U. S. Department of Health, Education and Welfare, which depositions described, in seventy-seven (77) pages of transcript, the involvement of the Government in the testing and releasing of the vaccine in question.

Finally, on June 13, 1973, eleven years after plaintiff contracted paralytic poliomyelitis, and eight years after plaintiff filed suit against the manufacturer, Wyeth Laboratories, plaintiff filed an administrative claim with the Department of Health, Education and Welfare, and on June 4, 1974, plaintiff filed the suit which is presently before us.

■ As a threshold defense, the Government has moved for an order dismissing the action on the grounds that the Court lacks jurisdiction over the subject matter, and that the complaint fails to state a claim upon which relief can be granted. Both of these grounds are based upon the assertion that plaintiff's alleged claim is barred by the two-year statute of limitations provided for in the Federal Tort Claims Act, 28 U.S.C. § 2401(b). Since, however, the Court has considered matters outside the pleadings which were presented by the parties, the Court will treat this motion as one for summary judgment and dispose of it as provided by Rule 56 of the Federal Rules of Civil Procedure.

## DISCUSSION

■ The statute of limitations applicable to the Federal Tort Claims Act is a jurisdictional requisite to suit in the federal courts. If an action is not begun within the prescribed period, a federal district court is without jurisdiction to entertain it. Ashley v. United States, 413 F.2d 490, 492 (9th Cir. 1969); Turkett v. United States, 76 F.Supp. 769, 770 (N.D.N.Y.1948). See Best Bearings Co. v. United States, 463 F.2d 1177, 1179 (7th Cir. 1972); Bialowas v. United States, 443 F.2d 1047, 1048–1049 (3d Cir. 1971); Crown Coat Front Co. v. United States, 363 F.2d 407, 411 (2d Cir. 1966), rev'd on other grounds, 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967); Isthmian Steamship Co. v. United States, 302 F.2d 69, 70 (2d Cir. 1962).

■ The Supreme Court has ruled that this limitation period as well as any other limitation upon which the Government consents to be sued "must be strictly observed and exceptions thereto are not to be implied." Soriano v. United States, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957); United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941).

■ Suits against the United States can only be brought in the manner prescribed. The extent of the Government's consent to be sued under 28 U.S.C. § 1346 is jurisdictional and where there has been so specific authority granted, a court has no power to hear the matter raised. United States v. Carey Terminal Corp., 209 F.Supp. 385, 386 (E.D.N.Y.1962); Pargament v. Fitzgerald, 391 F.2d 934 (2d Cir. 1968), affirming, 272 F.Supp. 553 (S.D.N.Y.1967).

### The Statute

The Federal Tort Claims Act statute of limitations in effect when the plaintiff contracted polio, and also in effect when plaintiff first commenced his ac-

tion against Wyeth Laboratories provided:

28 U.S.C. § 2401

*Time for commencing action against the United States* (applicable to claims accruing on or before January 18, 1967)

\* \* \* \* \* \*

(b) A tort claim against the United States shall be forever barred unless action is begun within two years after such claim accrues . . .

A tort claim which accrued after January 18, 1967 is barred "unless it is presented in writing to the appropriate Federal agency within two years after such action accrues . . ." 28 U.S. C. § 2401(b).

Thus, the only relevant difference between the old version of § 2401(b) and the present Section is that under the old, an action had to be begun, whereas under the present the filing of an administrative claim will prevent the running of the statute. It will be shown later that under either statute the ruling of this Court upon this motion would be the same.

#### *"When a Claim Accrues"*

■ We next come to the question of when the two year period begins to run under the factual situation of the present case. The statute itself states that the period commences when a claim "accrues." 28 U.S.C. § 2401(b). The standard for determining when a claim accrues is governed by federal rather than state law. Kossick v. United States, 330 F.2d 933, 935 (2d Cir. 1964), cert. den., 379 U.S. 837, 85 S.Ct. 73, 13 L.Ed.2d 44; Ciccarone v. United States, 486 F.2d 253, 256 (3d Cir. 1973); Hungerford v. United States, 307 F.2d 99, 101 (9th Cir. 1962); Quinton v. United States, 304 F.2d 234, 235–240 (5th Cir. 1962).

■ Where the injury coincides with the negligent act and some damage is discernible at that time, the two-year statute of limitations begins to run immediately. Beech v. United States, 345 F.2d 872 (5th Cir. 1965); United States

v. Reid, 251 F.2d 691 (5th Cir. 1958). Where the injured party is not constrained to investigate, then a claim accrues when the injury is apparent, diagnosed, or discernible. Under the federal rule, the injured party is charged with diligent discovery of the negligent acts. Ciccarone v. United States, supra; Mendiola v. United States, 401 F.2d 695 (5th Cir. 1968); Pittman v. United States, 341 F.2d 739 (9th Cir. 1965), cert. den., 382 U.S. 941, 86 S.Ct. 394, 15 L.Ed.2d 351 (1965); Kossick v. United States, *supra*, 330 F.2d at 936.

In contrast to this traditional, stricter standard, where the limitation period commences to run with the occurrence of the act or omission giving rise to the claim, the federal courts have held that in medical malpractice actions against the Government the limitation period does not begin to run until "the claimant [has] discovered, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice." Toal v. United States, 438 F.2d 222, 225 (2d Cir. 1971); Quinton v. United States, 304 F.2d 234 (5th Cir. 1962).

Defendant contends that the stricter standard should be applied as "plaintiff has pleaded no special facts of undetectable injury or the like that would toll the statutory limitation." (Gov's br. # 1, p. 9). Unquestionably, claimant was aware of his injury which followed only several days from the time he ingested the live polio vaccine in June of 1962. "As a matter of federal law, where the injury coincides with the negligent act and some damage is discernible at the time" the statute of limitations begins to run. Mendiola v. United States, *supra*, 401 F.2d at 697. The injury itself clearly should have alerted Mr. Hammond that his affliction may have been caused by the negligent manufacture, testing or releasing of the live polio vaccine which he had taken several days previously.

" . . . Thus, the trial court properly concluded that . . . there came knowledge of facts sufficient to

alert a reasonable person that there *may have been* negligence related to the grievance for which the complaint was subsequently made. The *tragedy itself, unusual and unexpected, would ordinarily be expected to have alerted* [the plaintiffs] *to take steps to ascertain whether rights had accrued and if so, to protect those rights.*" (Emphasis added). Brown v. United States, 353 F.2d 578, 580 (9th Cir. 1965).

Therefore, to apply the traditional standard to the present case, plaintiff's claim would be time-barred. By 1962 Mr. Hammond's injury was apparent, diagnosed, and discernible, yet, plaintiff did not bring an administrative claim until June 13, 1973, nor did he bring this suit until June 4, 1974.

However, this Court is manifestly aware of the potential hardship to Mr. Hammond if it should rule that his claim is time-barred. Under such circumstances, the Court has reviewed the facts as set forth in the pleadings, motion papers, affidavits, and briefs of counsel in light of the less stringent standard set by the Federal courts in malpractice cases, although the present case, of course, does not comprise a medical malpractice claim.

The Federal rule was adopted, to a large degree, to prevent the undue harshness which resulted in many state jurisdictions whose courts ruled that a tort claim arises, and the limitations period begins to run, the very instant the tort occurs even though the resulting injury is latent and undetectable and despite the fact that the injury and the negligent act may be beyond ordinary human inference. See Quinton v. United States, *supra.* "A cause of action does not accrue under Federal law until the injury is discovered or by the exercise of ordinary care should have been discovered, or until the person harmed discovered or should have discovered that his legal rights have been invaded. Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282;" Kuhne v. United States, 267 F.Supp. 649, 651 (E.D.Tenn. 1967).

In 1962, plaintiff was painfully aware of the injury with which he was inflicted. The only remaining question, therefore, is at what point in time should plaintiff have discovered "the acts constituting the alleged malpractice", i. e., "that his legal rights had been invaded." Despite the Court's expressed awareness of the hardship in ruling a claim to be time-barred, particularly in this case, this Court finds that plaintiff's claim accrued at the *latest* in September 1966, and therefore plaintiff has failed to meet the jurisdictional requirements of the Federal Tort Claims Act by not bringing this action within the appropriate time period.

Plaintiff's counsel asserts in his supporting affidavit, that he only learned that he could bring an action against the United States in late 1973 when he first read the District Court's opinion in Griffin v. United States, 351 F.Supp. 10 (E.D.Pa.1972), aff'd, Griffin v. United States, 500 F.2d 1059 (3d Cir. 1974), a case also involving the negligent issuance of unsafe oral polio vaccine. Although the Court accepts as true plaintiff's assertion that the *Griffin* decision provoked the discovery of plaintiff's claim against the Government, the question is "whether before the date of the Griffin decision, plaintiff by his counsel *should* have known of the government's misconduct by the exercise of reasonable diligence." (Rheingold aff. ¶ 8).

To this question, the Court finds the following critical facts to be dispositive of the matter before it:

(1) On or about July 3, 1962, plaintiff became paralyzed and was hospitalized for three months and is still paralyzed in the lower portion of his body. [Exhibit A, Cossin affidavit, Hammond v. Wyeth Laboratories complaint ¶ 11.]

(2) On July 19, 1965, plaintiff commenced an action in the New York State Supreme Court, County of Kings, against Wyeth Laboratories, Inc., the manufacturer of the vaccine, for alleged negligence in its manufacture and testing of Lot 18, seeking recovery for the same injuries complained of in this pending suit.

From this date, the act of pursuing a legal remedy establishes an awareness of injury and the suspicion and assertion by the injured party that it was due to a wrongful act of another. As stated in Brown v. United States, *supra,* once a suspicion is or reasonably should have been aroused, the plaintiff has a duty to initiate and pursue the investigation.

(3) Plaintiff's counsel in the prior action is the same individual who represents plaintiff in the present suit.

■ Therefore, under the authority of Ciccarone v. United States, *supra,* and Accardi v. United States, *supra,* plaintiff cannot now assert "blameless ignorance" for his failure to timely assert his claim.

(4) On September 8, 1966, in preparation for litigation in the *Wyeth* suit, depositions were taken of Dr. Roderick Murray, then Director of the Division of Biologics Standards and Dr. Ruth Kirschstein, then Chief of the Pathology Section of the Laboratory of Viral Immunology, Division of Biologics Standards.

Upon review of these transcripts, this Court finds that said depositions described, in considerable detail, the involvement and the responsibility of the United States Government for the establishment of test standards, the review, and the eventual release of oral polio vaccines, and in particular Lot 18. Furthermore, the knowledge of the Government's involvement can be attributed to the plaintiff at even earlier dates:

a) Paragraph 4 of plaintiff's complaint in the *Wyeth* suit filed in of 1965 [See Exhibit A Cossin affidavit].

b) Paragraph 2 of affidavit of plaintiff's counsel filed in the prior litigation in January 1966 [See Exhibit C, Cossin affidavit].

c) Paragraphs 6, 11–16, 17–22, 27 of defendant's affirmation in opposition thoroughly set forth the Governments involvement, in the prior suit. [See *Exhibit D, Cossin af-fidavit*].

Thus, at the very latest, the above-mentioned depositions identified the specific acts and conduct by the United States Government relevant to the release of Lot 18 polio vaccine, the alleged cause of plaintiff's injuries herein.

From September of 1966, nearly eight years prior to plaintiff's suit in this Court and seven years before filing an administrative claim, plaintiff had ample notice and opportunity to discover any other acts which could have formed an action in tort against the Government. From plaintiff's own admission, "plaintiff knew of the involvement of the government in that he and his counsel participated in a deposition of two government scientists." [See affidavit in opposition p. 5].

■ Plaintiff argues, however, that such events do not constitute reasonable notice of the present cause of action. The Court disagrees. By September of 1966, plaintiff knew of his injury, knew that his legal rights had been invaded by the issuance of a defective lot of vaccine, and he knew of the duty and responsibility of the United States Government to control the issuance of such vaccines for the purpose of protecting the public from the very type of injury which occurred here. The finding of a duty owed by a defendant to a plaintiff, and the corresponding breach of that duty are obviously essential elements in any negligence action. In the frame of this case, plaintiff Hammond knew in September of 1966 of defendant's *duty.* From that point on it was incumbent upon plaintiff to investigate, to pursue the discovery for any other acts which would have comprised a *breach of that duty.* These facts known to plaintiff no later than September of 1966 reveal that, although plaintiff as he alleges did not know of the particular acts of "malpractice" of defendant Government, within a two year period of such date he reasonably should have discovered such facts.

Plaintiff states that it was not until his counsel read Griffin v. United States, *supra,* that he discovered a possible claim against the United States. Yet, at no time does plaintiff show what

material and relevant facts he or his counsel learned from such case that were not apparent, in the exercise of reasonable diligence, beforehand. The *Griffin* opinion told plaintiff nothing about Wyeth Lot 18 and nothing about the Government's involvement with said lot that he could not, in the exercise of reasonable diligence, have discovered for himself and actually did discover in the course of the prior civil litigation in 1966. The plaintiff in *Griffin* through penetrating pretrial questioning of the same Government witnesses Hammond examined in the *Wyeth* case discovered the negligence of the Government and there is no justification offered in this case as to why the plaintiff could not have taken the same steps as plaintiff in *Griffin* did to bring suit within the limitations period.

Plaintiff also asserts that the Government actively and deliberately "concealed from the public, including plaintiff, the facts relating to its negligence." (Rheingold aff. in opp. ¶ 13), and this fact should be used to toll the running of the statute. After reviewing the entire record, the Court finds such a conclusion conjectural and without support in the record. Furthermore, there is no law supporting plaintiff's assertion that such deceit should toll the running of the statute.

In Kilduff v. United States, 248 F. Supp. 310, 313–314 (E.D.Va.1960) the Court held:

"Even if the continued failure of the Government to uncover the report was deliberate, constituting fraud as the plaintiff avers, the concealment did not intermit the limitation's accrual. The Federal Tort Claims Act, in section 2680(h), Title 28, U.S.C., reserves to the United States its immunity from suit for deceit. The evident purpose of the exception is to exempt the United States from responsibility for deception on the part of any of its employees, servants or agents. To toll the limitation of the Act by reason of any lack of frankness of the examining physician here, would be to open the Government to suit because of his deceit. . . . The very spirit and intent of these exceptive provisions of the Act are violated if the maintenance of an action is in any degree whatsoever dependent upon the assertion of fraud."

The cases cited by plaintiff can all be distinguished from the case at bar. In Ciccarone v. United States, 350 F.Supp. 554, 562 (E.D.Pa.1972), as in the instant case, plaintiff cited "[V]arious cases in which courts have permitted plaintiffs to maintain actions which were filed more than two years after the negligent action. These were generally cases in which the plaintiff could not have known immediately that there was damage and, therefore, had no reason to suspect wrong-doing."

The furthest the courts have gone, in the view of this Court, in applying this rule is to cases where (1) the injury was undiscovered, and reasonably should not have been discovered or (2) where the injury was discovered but where the cause could not be reasonably inferred to the wrongdoing of another.

An example of the latter exception may be found in Tyminski v. United States, 481 F.2d 257 (3d Cir. 1973) where plaintiff had little reason to doubt that his injury was caused by a natural disorder and not the product of anyone's wrongdoing.

The test is whether the plaintiff should have had reason to believe or suspect wrongdoing. The Court holds that Mr. Hammond did have reason to suspect wrongdoing and "the unexpected and unusual trauma immediately following the procedure should have alerted plaintiff to diligently investigate the matter." *Ciccarone, supra,* 350 F.Supp. at 562.

The Court therefore grants Government's motion to dismiss for lack of subject matter jurisdiction on the ground that the suit was filed more than two years after the claim accrued and is therefore barred under the terms of 28 U.S.C. § 2401(b).

So ordered.